IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY M. BOWER,<br><br>　　Plaintiff,<br><br>v.<br><br>NATIONAL ADMINISTRATIVE SERVICE CO., LLC and PELICAN INVESTMENT HOLDINGS GROUP, LLC d/b/a AAP<br><br>　　Defendants. | NO. 4:21-cv-00998-MWB |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff Jeffrey M. Bower ("Plaintiff") filed this suit alleging that Defendants, National Administrative Service Co., LLC and Pelican Investment Holdings Group, LLC d/b/a AAP ("Defendants"), made at least seven (7) unsolicited telemarketing calls to his cellular telephone line. These calls played a pre-recorded message that stated Plaintiff's vehicle's factory warranty is expired and that he could extend it. The calls were made despite the fact that Plaintiff's telephone number was listed on the National and Pennsylvania Do Not Call Registries.

Defendants' unsolicited telemarketing calls used a pre-recorded message as screening method, a highly aggravating method of telemarketing that allows the telemarketer to call many more people than would be possible if a live agent was making the call, avoid the costs of using a live agent to do initial screening and prevent the called person from asking any questions that might identify the telemarketer. Defendants made further efforts to conceal their identity by transmitting a deceptive telephone number with a local area telephone codes to Plaintiff's telephone caller identification ("Neighbor Spoofing"). Neighbor Spoofing is done as a way to deceive the called party into believing the telemarketer is a local person or business, increasing the likelihood that the telemarketing call will be answered. The local area telephone codes transmitted by Defendants included the 814, 267, and 570 area codes, area codes only assigned to Pennsylvania telephones. Neither of the Defendants is located in Pennsylvania.

Defendants' aforementioned methods of concealment required Plaintiff to go to the extraordinary step of purchasing the Vehicle Service Contract ("VSC") that Defendants were marketing to identify the source of these unsolicited telemarketing calls. Plaintiff was not provided with any identifying information about Defendants' until he purchased this VSC.

The Defendants, now identified, try to blame the victim of their consumer protection statute violations by accusing Plaintiff and his counsel of a "cash grab"

because the VSC was purchased using Plaintiff's counsel's credit card. *See Docket Item No. 16, Footnote 3*. The use of Plaintiff's counsel's credit card has not been a secret. Plaintiff's counsel proactively notified Defendant Pelican Investment Holdings Group, LLC Florida counsel, Jason S. Weiss, Esquire, that Plaintiff's counsel's credit card was used for the purchase of the VSC in an email sent to Mr. Weiss on January 22, 2021. Far from the nefarious plot that Defendants are attempting to claim, Plaintiff was exercising caution and good judgment by not providing his credit card number over the phone to an unknown entity that would not identify itself and called using Neighbor Spoofing. Plaintiff and his counsel are both attorneys that work in the same office, Plaintiff's counsel was aware of the continued and harassing unsolicited telemarketing calls that Plaintiff had been receiving for a VSC. Plaintiff did not want to provide his credit card to the unknown, Neighbor Spoofing, unsolicited telemarketer out of fear that his credit card number would be misused and require him to cancel his credit card. Plaintiff's counsel offered the use of his spare, rarely used, credit card so Plaintiff could identify who was making these unsolicited telemarketing calls to him.

Additionally, Defendants' baldly claim that Plaintiff "consented and opted-in to being contacted". *See Docket Item No. 16, Footnote 1*. Plaintiff denies this allegation in his Amended Complaint. *See Docket Item No. 12 ¶ 34, 35 & 36*. Further, Defendants' behavior contradicts this claim, defies logic and good

business sense when they used Neighbor Spoofing to transmit a local, unknown, unadvertised telephone number to Plaintiff instead of an advertised telephone number for Defendants. If a consumer had opted-in to receive a call, a consumer would have expected this call to come from an advertised business number for Defendants or at least a telephone number where the Defendants are located, not a random, unadvertised, local area code telephone number.

## STANDARD

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint and is not an appropriate mechanism to resolve factual disputes. If a complaint plausibly states a claim and there is a set of facts consistent with the claims stated in the complaint, which would permit a plaintiff to recover, then a motion to dismiss for failure to state a claim should not be granted.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. The question is not whether the claimant "will ultimately prevail… but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal quotation marks omitted).

Thus, assessment of the sufficiency of a complaint is "a context- dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*,

627 F.3d 85, 98 (3rd Cir. 2010). In deciding a 12(b)(6) motion and when considering the legal sufficiency of a claim, courts accept factual allegations as true, drawing all reasonable inferences therefrom in the favor of the non-moving party. *ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 859 (3d Cir. 1994). See also, *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

For this reason, district courts strongly disfavor Rule 12(b) (6) motions. *Melo-Sonics Corp. v. Cropp*, 342 F.2d 856 (3d Cir.1965); *Kuromiya v. United States*, 37 F. Supp. 2d 717, 722 (E.D.Pa.1999). A court must only dismiss a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc., et al., v. Northwestern Bell Telephone Company, et al.,* 492 U.S. at 249-50, 109 S. Ct. 2893 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); *Neitzke v. Williams*, 490 U.S. 319, 326-327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

The Defendant in the instant action is attempting to utilize a 12(b)(6) motion to resolve factual disputes, something that is generally only done via a motion brought pursuant to F.R.C.P 56. Defendant is clearly not entitled to the granting of a 12(b)(6) motion because Plaintiff has stated legally cognizable claims and sufficient facts to demonstrate he is plausibly entitled to the relief prayed for in the complaint.

## ARGUMENT

### A.   Plaintiff has Plausibly Identified the Source of the Unsolicited Telemarketing Calls

Defendants seek to take advantage of their methods of concealment that included the use Neighbor Spoofing, pre-recorded messages that don't provide the identity of the caller and employees that are trained to not provide a company name, when they claim that "Plaintiff fails to provide and factual basis that the alleged telephone calls came at the direction of either of the Defendants or that either of the Defendants had anything to do with the calls." *See Docket Item No. 16*. What Defendants fail to acknowledge is that the VSC which Plaintiff purchased during the January 6, 2021 unsolicited telemarketing call to him shows the names of both Defendants, "AAP" is listed as the Seller and "National Administrative Service Co., LLC" is listed as Administrator. *See Docket Item No. 12 ¶ 15g & 37 and Exhibit "A"*. Additionally, a credit card charge on January 6, 2021 resulted from this purchase showing the name "AAP". *See Exhibit "B"*.

Defendants are not in the business of selling a tangible widget that could be sold and resold multiple times without their knowledge. Defendants are selling a Vehicle Service Contract, a Contract that was entered into by the Defendants that obligates Plaintiff to make ongoing monthly payments and one or both Defendants to pay for vehicle repairs for Plaintiff during the term of the Contract.

The entity that called Plaintiff on January 6, 2021 was able to charge a credit card in the name of "AAP" and had the ability to bind Defendants into a Contract. These are not acts that could be done without the knowledge and/or involvement of Defendants. Defendants have not denied the existence of this Contract, nor have they claimed an alternate method was used to sell Plaintiff the VSC.

Further, Defendants' statement that "these purported telephone calls could have come from anyone" is not credible. *See Docket Item No. 16*. Plaintiff has plead that when he answered the calls list in his Complaint he heard "a Pre-Recorded Message which stated that his vehicle's factory warranty is expired, this is his final notice, last chance to extend, and to press a number to be connected to an agent." *See Docket Item No. 12 ¶ 16*. This Pre-Recorded message and use of Neighbor Spoofing plausibly connects Defendants to the calls described in Plaintiff's Amended Complaint, including the final described call that resulted in Plaintiff purchasing the VSC from Defendants. *See Docket Item No. 12 ¶ 15a through 15g & 37*.

Defendants' further claim that it is "unrealistic for the Court to expect Plaintiff to suddenly be able to acquire such information through discovery because, as Plaintiff admits, no further point of contact is available." *See Docket Item 16.* This once again overlooks Plaintiff's purchase of Defendants' VSC being sold through a telemarketing call that was made to Plaintiff and that Defendants' and/or their telemarketer agent's telephone records could collaborate the purchase call and the other telephone calls listed in Plaintiff's Complaint and/or reveal additional unsolicited telemarketing calls made to Plaintiff by Defendants.

**B. Plaintiff has Sufficiently Identified the Violations by the Defendants**

Defendants' claim that Plaintiff's Amended Complaint is "painfully threadbare" is hyperbole. Plaintiff's Amended Complaint describes his claims in great detail, including the policy number of the VSC sold to Plaintiff, and when and how it was sold to Plaintiff. Further, Plaintiff does <u>not</u> just claim that he was called multiple times, Plaintiff provides exact dates of the other calls and the telephone numbers transmitted to his caller ID by those callers.

Plaintiff Amended Complaint pleads that because "AAP was permitted to market for and bind Defendant NASC into a vehicle service contract with Plaintiff" that "Defendant NASC is vicariously liable for the acts of Defendant AAP". *See Docket Item No. 12 ¶ 12 & 13.* Plaintiff pleads that each Defendant either did the claimed act or is vicariously liable for the claimed act.

Further, by Defendants' own admission they state that they are "separate entities with different roles, responsibilities and obligations." *See Docket Item No. 16*. Defendants have retained a single law firm for their counsel and have chosen to jointly file their Motion to Dismiss Plaintiff's Amended Complaint. Because of this Defendants should be able to determine if they admit or deny the claims in Plaintiff's Amended Complaint and they should be able to separate out which Defendant had a role, responsibility and/or obligation for any acts admitted to by Defendants.

Defendants are attempting to use their opaque business model and business relationship as a defense to a joint business venture. The involvement of both Defendants is plausibly shown by their names appearing in the VSC sold to Plaintiff. *See Exhibit "A"*. Discovery will allow the Plaintiff to determine the involvement and acts of each Defendant is his claims.

## CONCLUSION

For the foregoing reasons, Defendants, National Administrative Service Co., LLC and Pelican Investment Holdings Group, LLC d/b/a AAP Motion should both be denied.

Dated: August 9th, 2021.

                                Respectfully Submitted,

                By:   /s/ Jeremy C. Jackson
                        Jeremy C. Jackson, Esq.
                        **BOWER LAW & ASSOCIATES, PLLC**
                        403 South Allen Street, Suite 210
                        State College, PA 16801
                        (814) 234-2626 Telephone
                        (814) 237-8700 Fax
                        jjackson@bower-law.com
                        PA 321557
                        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 9th day of August, 2021, a true and correct copy of the above Joint Stipulation was filed with the Court's ECF/PACER Electronic filing system, where it was available for immediate viewing and download by all counsel of record.

Dated: August 9th, 2021.

                                        By: /s/ Jeremy C. Jackson

                                        Jeremy C. Jackson, Esq.
                                        *Counsel for Plaintiff*