## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY M. BOWER, | | No. 4:21-CV-00998 |
| Plaintiff, | | (Chief Judge Brann) |
| v. | | |
| NATIONAL ADMINISTRATIVE SERVICE CO., LLC and PELICAN INVESTMENT HOLDINGS GROUP, LLC d/b/a AAP, | | |
| Defendants. | | |

## MEMORANDUM OPINION

### MARCH 17, 2022

Most people, if they don't ignore the call in the first place, hang up when greeted with a pre-recorded message from an unidentified caller. Not Jeffrey Bower. After his seventh time receiving the same message about his vehicle's factory warranty expiring, he picked up the phone and purchased a policy.

But Mr. Bower is no fool. He is on the state and federal do-not-call lists. And he purchased the policy with his friend's credit card, who just so happens to be an associate at his law firm that represents individuals who receive unsolicited telemarketing calls. So in an unsurprising move given these circumstances, he sued the purveyors of these unsolicited calls shortly after purchasing the policy. Those vehicle warranty purveyors, National Administrative Service and Pelican

Investment Holdings Group, now seek to dismiss this suit, calling it, without an ounce of irony, a cash grab.

Perhaps that's what this case is, but this Court must entertain suits by money-grabbers and madhatters alike. Because Bower has pleaded facts showing that the Defendants violated the Telephone Consumer Protection Act (Counts I–III) and the Pennsylvania Unfair Trade Practice and Consumer Protection Law (Count IV–VI), the Defendants motion to dismiss is denied.

## I.    BACKGROUND

### A.    The Alleged Facts

Though his cell phone is on the Federal and Pennsylvania do-not-call registry, Jeffrey Bower alleges that between mid-November 2020 and early January 2021, he received seven telemarketing calls.[1] The numbers differed, with the area codes ranging from 267 (Philadelphia), 220 (Southeastern Ohio), and 570 (Northeastern Pennsylvania) to 814 (the area code of Mr. Bower's locality, State College).[2] But despite their seemingly disparate origins, each call came with the same pre-recorded message, warning Mr. Bower that his vehicle's factory warranty had expired and instructing him to press a number to be connected with an agent so that he could renew his policy.[3] But the message never identified the name of the company

---

[1]    Doc. 12 ¶¶ 15, 30, 31.
[2]    *Id.*
[3]    *Id.* ¶¶ 16, 18.

offering the policy; and each time Mr. Bower tried to call the number back, he was unable reach anyone.[4]

Mr. Bower contends that these facts led him to believe that the purveyors were using an Automated Telephone Dialing System and were engaged in caller ID "spoofing"—a process that transmits false information to the recipients caller ID.[5] So to uncover the source of these calls, he pressed a number to speak with an associate and bought an auto warranty policy.[6] That auto warranty policy ultimately uncovered that the Ohio-based corporation, "National Administrative Service Co., LLC," was the contract administrator, while "AAP" was the seller, which his further research revealed to be a pseudonym for Pelican Investment Holdings Group, a Delaware limited liability company based out of West Palm Beach, Florida.[7]

## B.    The Claims

With this information in hand, Mr. Bower sued both Companies. To start, Mr. Bower alleges three separate violations of the Telephone Consumer Protection Act. In Count I, he alleges a violation of 47 U.S.C. § 227(b)(1)(A)(iii), which prohibits the use of artificial voices and autodialing systems.[8] Count II, meanwhile, claims

---

[4]    *Id.* ¶¶ 19, 20.
[5]    *Id.* ¶¶ 17, 20–21.
[6]    *Id.* ¶¶ 21, 37.
[7]    *Id.* ¶¶ 6, 7, 37; Doc. 18-1 (AAP contract); Doc. 18-2 (credit statement describing the charge from AAP).
[8]    Doc. 12 ¶¶ 27–36, 39–42; *see* 47 U.S.C. § 227(b)(1)(A)(iii) (making it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or

- 3 -

that the Companies' conduct violated 47 U.S.C. § 227(b)(1)(B), a section that proscribes the use of prerecorded voices in telemarketing calls.[9] And finally, in Count III, he alleges a violation of 47 C.F.R. § 64.1200(c)(2), a regulation promulgated under the Act that prohibits entities from calling individuals on the federal do-not-call list.[10]

Aside from these federal law counts, Mr. Bower also claims that the Defendants' calls violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law. These allegations come in two parts. He first contends, in Count IV, that the Defendants' conduct violated the statute outright because 73 P.S. § 201-2(4)(XVII)(A) deems it unfair and deceptive for an entity to telemarket goods without identifying itself.[11]

---

prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.").

[9]   Doc. 12 ¶¶ 27–36, 43–46; *see* 47 U.S.C. § 227(b)(1)(B) (making it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission.").

[10]   Doc. 12 ¶¶ 27–36, 47–51; *see* 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any telephone solicitation to . . . A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.").

[11]   Doc. 12 ¶¶ 37–38, 52–56; *see* 73 P.S. §§ 201-3(a), 201-2(4)(XVII)(A) (making unlawful "solicitations for sales of goods or services over the telephone without first clearly, affirmatively and expressly stating: (A) the identity of the seller; (B) that the purpose of the call is to sell goods or services; (C) the nature of the goods or services; and (D) that no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered.").

But beyond this claim, Mr. Bower also argues that the Defendants' conduct violated the Pennsylvania Telemarketer Registration Act.[12] While the Pennsylvania Telemarketer Registration Act does not allow for private rights of action, Mr. Bower's pleadings contend that these violations may also serve as a predicate claim under the Consumer Protection Law.[13] So in Count V he alleges a predicate violation of 73 P.S. § 2245.2(a), which prohibits telemarketing calls to individuals on the state do-not-call list.[14] Likewise, in Count VI, he alleges a predicate violation of 73 P.S. § 2245.1, a section prohibiting practices like number spoofing.[15]

## II.   MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which

---

[12]   Doc. 12 ¶¶ 59–60, 65–68.

[13]   *See Shelton v. FCS Cap. LLC*, 2019 WL 6726404 (E.D. Pa. Dec. 11, 2019) (quoting *Lerro ex rel. Lerro v. Upper Darby Twp.*, 798 A.2d 817, 822 (Pa. Commw. Ct. 2002)) ("The [Pennsylvania Telemarketer Registration Act] vests enforcement authority with Pennsylvania's Attorney General, not individual consumers. '[W]here the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals.'").

[14]   Doc. 12 ¶¶ 37–38, 57–62; *see* 73 P.S. § 2245.2(a) ("No telemarketer shall initiate or cause to be initiated a telephone solicitation call to a telephone number of a residential or business telephone subscriber who does not wish to receive telephone solicitation calls and has caused his name, address and telephone number to be enrolled on a do-not-call list maintained by the list administrator." ).

[15]   Doc. 12 ¶¶ 37–38, 63–68; *see* 73 P.S. § 2245.1 ("No telemarketer shall take any action with the primary intent: (1) to prevent the transmission of a telemarketer's name or telephone number to any recipient of a telephone solicitation call when the equipment or service used by the telemarketer is capable of creating and transmitting the telemarketer's name or telephone number; or (2) to circumvent, bypass or disable any product or service used by the residential or business telephone subscriber to screen telephone calls.").

relief can be granted." Following the landmark decisions *Bell Atl. Corp. v. Twombly*[16] and *Ashcroft v. Iqbal*,[17] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] In its assessment, the Court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[19] Still, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[20] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[21]

## III.  ANALYSIS

In moving to dismiss Mr. Bower's suit, the Defendants make two arguments—neither of which relates to the elements of these various counts.

First, the Companies contend that Mr. Bower's complaint fails to allege that they made the calls or that the calls came at their direction.[22] In their view, it would require an "illogical leap" to find that "because one alleged phone call may have

---

[16]    550 U.S. 544 (2007).
[17]    556 U.S. 662 (2009).
[18]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[19]    *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[20]    *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").
[21]    *Iqbal*, 556 U.S. at 678.
[22]    Doc. 16 at 5–7.

originated with either [Company]," that somehow the six preceding ones did as well.[23] In making this point, they further emphasize that Mr. Bower did not know the identities of these callers either, which they dub a "fatal flaw."[24] As a result, they argue that his allegations are "wildly speculative," factually deficient, and should be dismissed with prejudice.[25]

The Companies' second ground for dismissal centers on Mr. Bower having alleged claims against them as a collective, without trying to distinguish who committed which tortious act.[26] Because the Companies are separate entities, they contend that "it would be completely unreasonable" for the Court to require they respond to "a painfully threadbare Amended Complaint that is completely devoid of clarity and factual support."[27]

But as I see it, the Companies' arguments do little more than mark squares on the hyperbole bingo card. To start, the logical conclusion at this pleading stage *is* that these identical pre-recorded messages came from the same source, especially absent any argument that this pre-recorded message is used industry wide. That Mr. Bower acknowledged he could not identify the caller until he bought a policy after

---

[23]   *Id.* at 5.
[24]   *Id.* at 6.
[25]   *Id.* at 7.
[26]   *Id.*
[27]   *Id.* at 7–8.

the seventh call is neither a fatal flaw, nor does it render his pleadings wildly speculative.[28]

The Companies' attempt to hide behind its corporate structure are similarly unavailing. Far from a threadbare recital of the elements of the cause of action, Mr. Bower's complaint details when he joined the state and federal do-not-call lists.[29] It lists the numbers that he got calls from, the dates he received those calls, and describes the calls' contents.[30] And finally, it identifies Pelican Holdings Group as the seller of the policy, National Administrative Service as the administrator, and further alleges, given their business arrangement, that they should be held jointly and severally liable for violations.[31] A jointly represented duo should have no difficulty intelligently answering this complaint.

## IV.   CONCLUSION

The operative question in this suit is not whether Mr. Bower's suit is a cash grab, but whether he has pleaded facts showing that he was contacted by a telemarketer in violation of federal and state law. In the Court's view, he has met this burden. The Defendants' motion to dismiss is therefore denied.

---

[28]   *See* Doc. 12 ¶¶ 16, 20.
[29]   *Id.* ¶¶ 30–31.
[30]   *Id.* ¶¶ 15–16.
[31]   *Id.* ¶¶ 11–13; Doc. 18-1 (AAP contract); Doc. 18-2 (credit statement describing the charge from AAP/Pelican Holdings Group).

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge